353 So.2d 497 (1977)
Dorothy Louise Fisher FOWLER
v.
M. J. FISHER and Grace Fisher.
No. 50115.
Supreme Court of Mississippi.
December 7, 1977.
Lawrence W. Rabb, Meridian, for appellant.
Bourdeaux & Jones, Thomas D. Bourdeaux, Charles C. Pearce, Meridian, for appellees.
Before PATTERSON, SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
Dorothy Fowler brought suit alleging that her father's will, which had been probated in common form, was the product of undue influence and made without testamentary capacity. The cause was tried before a jury in the Chancery Court of Lauderdale County. At the close of contestant's case, the trial court sustained a motion to exclude the evidence and directed a verdict for the proponents of the will. The contestant appeals contending the trial court erred in denying a jury trial in a will contest, in granting a directed verdict and in suppressing evidence in limine. The issues are:
1. Is a jury's verdict merely advisory in a will contest in chancery?
2. Was there sufficient evidence of testamentary incapacity and undue influence to be submitted to the jury?
3. Did the court err in sustaining a motion in limine restricting testimony on undue influence?

I.

THE ROLE OF A JURY IN A WILL CONTEST IN CHANCERY
At the conclusion of the contestant's case, the proponents of the will moved to exclude the testimony on the lack of testamentary capacity and undue influence and to direct a verdict upholding the will. The court prior to sustaining the motion stated:
... This Court is conscious of the province of the jury to decide certain issues, but it is also the province of this Court and the duty of this Court to either accept the jury's finding or not accept it. The jury in Chancery Court, according to my understanding of the law, is purely *498 advisory, is not binding on the court in any respect.
And:
... Therefore, the Court could not allow the issue or the question of mental capacity to even be submitted to the jury because under the facts we have had up to this point, the Court would have to override that verdict if they decided otherwise.
The proper role of a jury in chancery court has long been a subject of debate in Mississippi. See Griffin v. Jones, 170 Miss. 230, 154 So. 551 (1934) [Chief Justice Smith dissenting]; Griffith, Mississippi Chancery Practice, § 597 n. 17 (2d ed. 1950).
Three statutes appear to be controlling on the present facts. The first, Mississippi Code Annotated section 11-5-3 (1972) provides in part as follows:
Issue may be tried by a jury.
The chancery court, in a controversy pending before it, and necessary and proper to be tried by a jury, shall cause the issue to be thus tried to be made up in writing... . (Emphasis added.)
The second, Section 91-7-29, states:
Trial of issue devisavit vel non.
On the trial of such issue, the proponent of the will shall have the affirmative of the issue and be entitled to all the rights of one occupying such position. The witnesses shall be examined orally before the jury, except where in the circuit court depositions would be admissible; and the testimony taken on the probate of the will shall be admissible if the witnesses who delivered it be dead, out of the state, or have since become incompetent. (Emphasis added.)
Sources: Codes, 1880, § 1971; 1892, § 1825; 1906, § 2000; Hemingway's 1917, § 1665; 1930, § 1612; 1942, § 508.
The third, Section 91-7-23, provides in part:
Validity contested in two years.
Any person interested may, at any time within two years, by petition or bill, contest the validity of the will probated without notice; and an issue shall be made up and tried as other issues to determine whether the writing produced be the will of the testator or not ...
The first case to consider the role of a jury in chancery after passage of the general statute (Section 11-5-3) in its present form was Carradine v. Carradine, 58 Miss. 286 (1880). On allegation of error for refusal to grant a jury trial, this Court first ruled that no question of fact was presented, but went on to state that "the granting of a jury trial in the chancery court where no statute prescribed one, is always discretionary with the chancellor." (58 Miss. at 293. Emphasis added.) Subsequent interpretations of the statutory language "necessary and proper to be tried by a jury" left to the chancellor's discretion the decision of a jury trial being necessary and proper but limited the discretion to those occasions when no statute required a jury trial. Studdard v. Carter, 120 Miss. 246, 82 So. 70 (1919). Significantly, those cases which did not expressly contain the limitation, apparently did so by implication. See First State Bank v. Lincoln, 97 Miss. 720, 53 So. 387 (1910), a case involving a bankruptcy accounting, which omitted the language restricting the chancellor's discretion to cases not statutorily requiring a jury, but found no statute requiring a jury trial.
Other decisions hold that when a jury is discretionary, no proper complaint could be made to error in the jury instructions because the chancellor could either submit the issue to a jury or decide the issue himself. See Pittman v. Lamb, 53 Miss. 594 (1876), and Studdard v. Carter, 120 Miss. 246, 82 So. 70 (1919), which stated the following:
... While the chancellor has the power to set aside a jury verdict in cases where jury trial is not granted by statute, and decide it in accordance with his own conception of the truth of the facts in issue, he will ordinarily not do so unless in his judgment the jury's finding is manifestly wrong; and, where a jury's verdict is approved by the chancellor by rendering judgment thereon, this court will not reverse for misdirection of the jury *499 unless we could say that the facts did not support the verdict, or unless we were convinced from the whole record that the chancellor misconceives the law applicable to the case.
(120 Miss. at 255, 82 So. at 72)
More recent decisions have indulged this rule only to issues where a jury trial was not required by statute. Cases containing "since grant of a jury trial is wholly discretionary, the court may disregard the finding of the jury when made ..." noted that a jury trial was discretionary and not mandated. Laub v. Reason, 217 Miss. 475, 64 So.2d 637 (1953), determination of conflicting claims to realty; Griffin v. Jones, 170 Miss. 230, 154 So. 551 (1934), in equity on replevin damages.
We think these cases illustrate that while a chancellor may deny a jury trial, disregard the verdict of the jury, or not be subject to error due to erroneous instructions, that each category is based upon the premise that a jury trial was not required by statute. These restrictive interpretations indicate that a chancellor's discretion is not as broad where a jury trial is mandated.
The question remains  to what extent is a chancellor's discretion limited in a jury trial required by statute?
The issue of devisavit vel non in common law was traditionally sent from chancery to the circuit court for jury determination of the factual issues. Asay v. Hoover, 5 Pa. 21, 45 Am.Dec. 713 (1846). Early Mississippi chancery procedures tracked the common law in submitting factual issues on wills to a jury in circuit court. Hutchinson's Code (1848), ch. 49, Art. 1(29) [the forerunner of § 91-7-23] specified that a will contest "shall be tried by a jury in the circuit . . court ... or in the court of chancery as the chancellor shall direct, whose verdict shall be final between the parties saving to the court a power of granting a new trial, for good cause as in other trials... ." (Emphasis added.)
The language in later statutes has varied somewhat; however, the requirement of a jury trial on devisavit vel non has remained consistent. Moreover, the current wording of Mississippi Code Annotated section 91-7-29 (1972), "The witnesses shall be examined orally before the jury, except where in the circuit court depositions would be admissible... ." (Emphasis added.) implies that the rules applicable on the issue of devisavit vel non are the usual rules of a jury trial in circuit court. This interpretation is consistent with prior versions of the statute which stated, "the evidence in such cases shall be produced as in circuit courts ..." [Miss.Code (1880) § 1971] and "a jury ... verdict shall be final between the parties, saving to the court a power of granting a new trial ... as in other trials." Hutchinson's Code (1848), ch. 49, Art. 1(29). Additionally, this Court has indicated that a jury verdict in a will contest is not "merely advisory." In Sheehan v. Kearney, 82 Miss. 688, 21 So. 41 (1896), in reversing because a peremptory instruction was granted, we stated:
... This was peculiarly a case for the jury, under proper instructions from the court, as to the law. A verdict for either party, on this testimony, should not have been disturbed by the court ... Facts are for the jury, the triers of issues of fact... .
(82 Miss. at 689, 21 So. at 41)
Also, in Woodville v. Pizzati, 119 Miss. 442, 81 So. 127 (1919), the following appears:
... The testimony on behalf of the contestant was sufficient to put the issue of undue influence to the jury and, if believed by the jury, makes out a case. This issue of fact is solely one for the jury to pass on, and their findings in this case should not be set aside... .
(119 Miss. at 456, 81 So. at 129)
It is argued, however, that a jury trial in chancery is merely advisory either because (1) since 1880 the words "the verdict of the jury shall be final" have been omitted from the will contest statute or (2) Section 159 of the Mississippi Constitution (1890) vests in the chancery court full equity jurisdiction, thereby empowering the chancellor to make final decision of fact. Griffith, Mississippi Chancery Practice, § 597 n. 17 (2d ed. 1950).
*500 The phrase, "the verdict of the jury shall be final" was indeed omitted from the Code of 1880 and subsequent codes; however, in determining the intention emanating from the omission, consideration need be given to the time of the occurrence. Prior to 1880, Section 1099 of the Code of 1871 (Will Contest statute) specified "the verdict of the jury shall be final between the parties to the issue, saving the right to grant new trials as in other cases... ." A literal interpretation of these words could connote absolute finality to a jury verdict saving to the chancellor only the authority to grant a new trial for other reasons. Yet, in 1879 in Broach v. Sing, 57 Miss. 115, Justice Campbell, who was then revising the 1871 Code and who in 1880 omitted the above language in his revision,[1] when confronted with the issue of whether it was error to sustain a demurrer to the evidence, held:
A demurrer to the evidence on the trial of an issue devisavit vel non is admissible... .
(57 Miss. at 116)
Based on this exception to a jury verdict's finality, the more likely interpretation of the omission, we think, was to clarify that a verdict in a will contest was to have the same role as in a court of law and be the subject of rules of law concerning directed verdicts and peremptory instructions.
The contention of the appellees that the fact-finding function of a jury in chancery contravenes the constitutional grant of equity jurisdiction is not persuasive in a will contest. While it is true that the chancery court has jurisdiction in all matters of equity, Mississippi Constitution (1890), section 159(a), and matters testamentary and of administration, Section 159(c), it does not follow that implementation of these constitutional provisions by statutory enactments for jury trials in any way lessens the jurisdiction of the chancery court. The language of Mississippi Code Annotated section 91-7-23 (1972), "An issue shall be made up and tried as other issues," and that of Section 91-7-29, "The witnesses shall be examined orally before the jury," rather than diminishing equity jurisdiction, merely continues the common law practice of jury determination of factual issues. Asay v. Hoover, 5 Pa. 21, 45 Am.Dec. 713 (1846); and Whitfield v. Rogers, 26 Miss. (4 Cushman) 84 (1853).
Other cases have perhaps indicated, but not held, that a jury in a will contest is advisory. An examination of them, however, removes the inference. In Darby v. Arrington, 194 Miss. 123, 11 So.2d 220 (1942), the unsupported statement, "nor can we assent to appellant's contention that the issue of devisavit vel non was required to be tried to a jury," was dictum inasmuch as the case involved a collateral attack upon a will which had been previously probated in solemn form. Neither does Wall v. Wall, 30 Miss. 91 (1855), support the premise that a jury's verdict is advisory. It holds only that the question of whether a writing was a deed or a will was a question of law requiring no resolution of fact by a jury.
Other cases have withheld the issues of undue influence or testamentary capacity from the jury, not on the theory of being advisory, but rather where as a matter of law the contestant's evidence when considered as true together with all reasonable inferences, created no issue for jury resolution. Ellis v. Ellis, 160 Miss. 345, 134 So. 150 (1931); Barnett v. Barnett, 155 Miss. 449, 124 So. 498 (1929); and Scally v. Wardlaw, 123 Miss. 857, 86 So. 625 (1920). And, in jury trials in courts of law we have stated in ruling on directed verdicts, peremptory instructions and judgments notwithstanding the verdict that the judge is not permitted to substitute his judgment of the facts for that of the jury, but may consider only evidence that is not in conflict. "The jury resolves conflicts of fact  the court resolves issues of law arising from nonconflicting facts." Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975), and cases collated at 656-657.
*501 We conclude that the role of a jury in a will contest is the same as that of a jury in a civil trial in a court of law and is not "merely advisory."

II.

THE DIRECTED VERDICT
Applying the customary standards on a motion for a directed verdict, was there sufficient evidence, conceding its truth and reasonable inferences, to overcome the presumption of validity of the will arising from its probate?
Without contradiction the psychiatric staff of East Mississippi State Hospital conducted an examination of the testator at the time of the will's execution and testified that he was then competent to make a will, but the record also reveals a qualified psychiatrist gave his opinion in testimony that based upon an examination of the record the testator was incompetent to make a will. Other testimony discloses the testator had been committed to institutions for mental illness in 1947, 1959, 1964, 1972, and was on leave from the mental institution at the time the will in question was executed. Additionally, there was testimony the testator had been certified as incompetent and had a conservator appointed for him because of his inability to conduct his business affairs.
There was also testimony that he was on medication for manic-type depressive illness at the time the will was made. We make no judgment regarding which evidence was credible nor the weight it merited, but we are of the opinion on the evidence presented, with its inferences, there was an issue of fact sufficient to require resolution by a jury.
Without detail, the same circumstances exist as to the issue of undue influence. Of some significance is the testimony that the testator resided with the proponents and to a degree was dependent upon them, was taken to their attorney by the proponents and a favorable will to them resulted. Again, we make no judgment on the credibility or weight of the evidence, but only state that in our opinion an issue was made for jury determination.

III.

THE MOTION IN LIMINE TO EXCLUDE EVIDENCE
After the trial began on November 15, 1976, the proponents served on the contestant a motion in limine and requested its disposition without previous notice. The effect of the motion, when granted, was to exclude "any testimony or documentary evidence relative to the administration of the estate of J.E. Fisher and of the actions of M.J. Fisher or Grace Fisher in regard to the property of J.E. Fisher or of his estate." Under the contestant's theory of the case, as evidenced by her sworn bill of particulars, M.J. and Grace Fisher harbored a hostile attitude to the financial interest of the testator by contesting his entitlement to the entire estate of his deceased brother J.E. Fisher. From this, if we understand contestant's theory, the proponents would not likely be the natural object of the testator's bounty absent undue influence.
Not having a sufficient record before us, we make no determination on the merits of the order granting the motion in limine. However, since the case is to be remanded for a new trial, we think it appropriate if the motion is renewed, the contestant should be afforded sufficient notice to permit time for preparation to resist. See, Griffith, Mississippi Chancery Practice, §§ 404-405 (2d ed. 1950).
REVERSED AND REMANDED.
INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] Justice Campbell was appointed to revise the Code in 1878, 1878 Mississippi Laws ch. 86, §§ 1-4. His revision was accepted in 1880, 1880 Mississippi Laws ch. 1, §§ 1-4. See also Skates, A History of the Mississippi Supreme Court 1817-1948 at 66 (1973).