## Richmond

WALTER J. HUFFMAN, OSCAR T. WARREN, M. E. MCALEER v. HARRY KITE.

June 18, 1956.

Record No. 4557.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Robert P. Buford* and *H. Merrill Pasco*, for the appellants.

*J. Sloan Kuykendall* and *Thomas V. Monahan* (*Henry H. Whiting*, on brief), for the appellee.

MILLER, J., delivered the opinion of the court.

Appellee, Harry Kite, complainant in the trial court, filed a bill for a declaratory judgment against Walter J. Huffman, Oscar T.

Warren and Lee Hoak, members of the School Trustee Electoral Board of Page county, (hereinafter called Electoral Board), and against M. E. McAleer, a member of the School Board of Page county. The objects of the proceeding were to test the validity of orders of the circuit court of March 7 and 10, 1955, appointing Huffman, Warren and Hoak members of the Electoral Board and to challenge the validity of the election by the Electoral Board of McAleer as a member of the School Board.

Judge Hamilton Haas, who made the Electoral Board appointments, disqualified himself, and Judge Rayner V. Snead, judge designate, presided. After an *ore tenus* hearing, the chancellor granted the prayers of the bill, and by decree of September 6, 1955, declared the orders of March 7 and 10, 1955, to be null and void *ab initio*. The appointments of Huffman, Warren and Hoak to the Electoral Board by those orders and the election of McAleer to the School Board were held invalid, and Walter J. Huffman, Leo H. Hoak, and Harry Kite, appointees under former orders were, as such, declared to be lawful and duly qualified holdover members of the Electoral Board. The court also found that McAleer had been elected to the School Board by the votes of Huffman and Warren, and as Warren had not been legally appointed to the Electoral Board, the purported election of McAleer to the School Board was held invalid.

The effect of this decree was that Huffman, Hoak and Warren had not been legally appointed to the Electoral Board in 1955, and Huffman, Hoak and Kite were holdover members of the Electoral Board under appointments made in 1950 and 1951, and McAleer's election to the School Board was invalid. Thus Warren was ousted from the Electoral Board and Kite declared to be still a member and McAleer was ousted from the School Board.

A correct interpretation of § 22-60, Code of 1950, is determinative of the status of the parties litigant. Its pertinent parts follow:

"In each county there shall be a board, to be known as the school trustee electoral board, which shall be composed of three resident qualified voters, who are not county or State officers, to be appointed by the circuit court of each county, or the judge in vacation, *within thirty days after the first day of July, nineteen hundred and fifty and every four years thereafter.* * * * Any vacancy occurring within the term of the appointees shall be filled by the circuit court, or by the judge in vacation, within thirty days thereafter." (Emphasis added.)

The question presented is: Whether or not the language in § 22-60 which provides for the appointment of a School Trustee Electoral Board "by the circuit court of each county, or the judge in vacation, within thirty days after the first day of July, nineteen hundred and fifty and every four years thereafter" is mandatory or directory as to the time of the appointment.

The facts are not in dispute.

On July 28, 1950, pursuant to the requirements of § 22-60, the circuit court of Page county appointed Walter J. Huffman, Carroll E. Beach, and Harry Kite as members of the Electoral Board. Beach resigned and on November 19, 1951, Hoak was appointed in his stead. In July, 1954, it was again time to appoint three members of the Electoral Board, but no new appointments were made within the thirty day period mentioned in the statute, and the old board, consisting of Huffman, Hoak and Kite continued to serve. As thus constituted, the holdover Board functioned until March 7, 1955, when the circuit court entered an order appointing Huffman, Hoak and Harley W. Blevins as members of the Electoral Board. Blevins declined to serve and thereupon the circuit court entered an order on March 10, 1955, appointing Oscar T. Warren as a member of the Electoral Board. Huffman and Hoak were members of the old board, as well as appointees on the new board; Warren was the new appointee, and the replacement of Kite by Warren led to this litigation.

After Huffman, Hoak and Warren had qualified, the new Electoral Board, as thus constituted, met on May 14, 1955, to elect a member of the School Board pursuant to § 22-61, et seq., Code of 1950, to fill the vacancy to be created on that body by the expiration on July 1, 1955, of G. Jennings Kite's term of office on that Board. McAleer was nominated by Huffman for election to the School Board and elected by the votes of Huffman and Warren. Hoak abstained from voting because he preferred the re-election of G. Jennings Kite for another term. On June 30, 1955, McAleer qualified for the office to which he had been elected.

Appellee insists that as no appointments were made to the Electoral Board within thirty days after July 1, 1954, the old Board that then consisted of Huffman, Hoak and Kite was, by force of § 22-60, continued in office, and that the court had no power or authority to make the appointments to the Board after expiration of the thirty day period mentioned in § 22-60, until July, 1958.

The Electoral Board is appointed under § 22-60 by the circuit court or the judge in vacation, and that Board elects the County School Board. Section 22-61, *et seq.*, Code of 1950. Appointment of these boards in this manner was first provided for in 1930 when Acts 1928, ch. 471, § 653, p. 1202 (now § 22-60, *et seq.*, Code of 1950) became effective.

It is agreed that the purpose of the legislation fixing the qualifications of members of the two boards and the method of selecting the boards are to remove members of the Electoral Boards and of the County School Boards from the pressure and influence of politics. Appellee and appellants cite and quote alike from *Board of Supervisors of Chesterfield County* v. *County School Board*, 182 Va. 266, 28 S. E. 2d 698, as follows:

"The method of selecting school trustees, which is by appointment of a School Trustee Electoral Board, composed of three citizens appointed by the Circuit Court (Sec. 653a1 of Code) shows the policy of the State to make these school boards as far removed from politics as is possible." At page 276.

However, the object sought to be attained through the method of selection of the members of these boards affords little aid, if any, in determining whether the provision as to the time for the appointment of the Electoral Board is mandatory or directory. In either event the Electoral Board will be composed of appointees selected by the same appointive power through holdover of the former appointees of the court or judge, or through a new appointment by court or judge.

The primary object in the interpretation of a statute is to ascertain and give effect to the legislative intent. 17 M. J., Statutes, § 35, p. 284, and cases cited.

By keeping in mind the history of the act, its nature, subject matter and purpose, and the significance and importance of the provision here in question, and then by giving to the language used its ordinary and usually accepted meaning, we can determine whether or not the provision relating to the time of appointment by the Electoral Board is imperative and thus mandatory, or merely advisory, and thus only directory.

"No general and satisfactory rule for ascertaining such intention has been formulated. It has been said by an eminent jurist in discussing the subject that ' * * * you cannot safely go further than that in each case you must look to the subject-matter, consider the import-

ance of the provision, and the relation of that provision to the general object intended to be secured by the act, and upon a review of the case in that aspect determine whether the enactment is what is called imperative or directory. * * *' Lewis' Sutherland, Statutory Construction, Vol. 2, 2nd Ed., page 1116; Crawford's Statutory Construction, page 517." *Nelson* v. *Nash*, 126 W. Va. 568, 29 S. E. 2d 253 (1944); *State* v. *Pohl*, 214 Minn. 221, 6 N. W. 2d 227 (1943).

"Generally the rule is where a statute specifies a time within which a public officer is to perform an act regarding the rights and duties of others, it will be considered as merely directory, unless the nature of the act to be performed or the language shows that the designation of time was intended as a *limitation of* power." *Nelms* v. *Vaughan*, 84 Va. 696, 699, 5 S. E. 704.

"The general rule most certainly is, that where a statute directs a public officer to do a thing *within a certain time*, without any negative words restraining him from doing it afterwards, the naming of the time will be regarded as merely directory, and not as a limitation upon his authority." *Barnes* v. *Badger*, 41 Barb. 98, 99, quoted with approval in *Fallon* v. *Hattemer*, 229 App. Div. 397, 242 N. Y. S. 93, 96.

"In many cases, statutory provisions as to the precise time when a thing is to be done are not regarded as of the essence, but are regarded as directory merely. This rule applies to statutes which direct the doing of a thing within a certain time without any negative words restraining the doing of it afterwards. Thus, where a statute prescribes a time within which a public officer is to perform official acts affecting the rights of others, the general rule is that it is directory as to the time, unless from the nature of the act the designation of time must be considered a limitation on the power of the officer. * * *" 50 Am. Jur., Statutes, § 23, p. 46.

Decisions adhering to this principle are *Fortney* v. *Wozney*, 326 Pa. 494, 192 A. 648; *Morrison* v. *Unemployment Compensation Board of Review*, 141 Pa. Super. 256, 15 A. 2d 391; *Brenner* v. *Bruckman*, 253 App. Div. 607, 3 N. Y. S. 2d 265; *French* v. *Edwards*, 80 U. S. (13 Wall.) 506, 20 L. ed. 702.

█ The pertinent parts of the section which we must interpret read as follows:

"In each county there *shall* be a board, * * * which *shall* be composed of three resident, qualified voters who are not county or State

officers, *to be appointed* * * * within thirty days after the first day of July * * * and every four years thereafter." (Emphasis added.)

Upon examination it will be seen that the word "shall" is directed to the appointment of a board and to the members' qualifications, but it has no direct applicability to the time of the appointment. The act does not say that the board "shall" be appointed within the time mentioned but that the members are "to be appointed" within the time mentioned.

When the language having to do with the time for the appointment of the Board is considered with the last sentence in the act, which provides that "any vacancy occurring within the term of the appointees shall be filled * * * within thirty days thereafter," it is quite plain that the provision that the members of the board are "to be appointed * * * within thirty days after the first day of July * * *" is not mandatory but merely directory. In case of a vacancy on the board it could hardly be reasonably contended that even the mandatory word "shall" as used in the last sentence would preclude the court from filling the vacancy had the court for any cause failed to do so within thirty days after the vacancy occurred.

In the recent case of *Ladd* v. *Lamb*, 195 Va. 1031, 81 S. E. 2d 756, the question presented was whether or not a provision of the statute under consideration was mandatory or directory, the pertinent part of which follows:

"The clerk of the court * * * *shall forward* to the Commissioner a certified copy or abstract of any conviction and of any forfeiture of bail or collateral deposited to secure a defendant's appearance in court unless the forfeiture has been vacated, * * * *immediately upon the expiration of fifteen days after the conviction or forfeiture or judgment has become final without appeal.* * * *" (Emphasis added.)

Ladd had been convicted on January 9, 1953, of a second traffic violation, *i.e.*, speeding, but the clerk did not forward an abstract of conviction to the Commissioner of Motor Vehicles until June 8, 1953. Accused contended that his permit to drive could not be forfeited because the provision directing the clerk to forward an abstract of conviction "immediately upon expiration of fifteen days after conviction" was mandatory and not directory. In holding that there was no merit in this contention, we said:

"If the time limit in which the abstract of conviction must be certified to the Commissioner is mandatory, then the failure to comply therewith would vitiate the abstract and preclude the entry of any

order revoking the operator's license." At page 1035. We then quoted with approval from 67 C. J. S., Officers, § 114(b), p. 404, as follows:

"As a rule a statute prescribing the time within which public officers are required to perform an official act regarding the rights and duties of others, and enacted with a view to the proper, orderly, and prompt conduct of business, is directory unless it denies the exercise of the power after such time, or the phraseology of the statute, or the nature of the act to be performed, and the consequences of doing or failing to do it at such time are such that the designation of the time must be considered a limitation on the power of the officer. When the legislature prescribes the time when an official act is to be performed, the broad legislative purpose is to be considered in deciding whether the time prescribed is directory or mandatory * * *."

Appellee insists that the act is mandatory upon its face; the word "shall" in the statute evidences an intent that it be given mandatory effect as to the time of appointment of the Electoral Board.

Such words as "shall" and "must", when used in statutory provisions are usually expressive of compulsion and are mandatory in meaning. However, the words "shall" and "may" are used interchangeably at times and "shall" is often interpreted to be directory in meaning. 82 C. J. S., Statutes, § 380, p. 877, *et seq.*

If it appears from the nature, context, and purpose of the act that the legislature intended that "shall" be treated as advisory or directory, then it should be accorded that meaning.

"It is true that the statute, in declaring who may be beneficiaries, uses the word 'shall', but while that word may primarily be mandatory in its effect, and the word 'may' primarily permissive, yet the courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject-matter and context. * * *" *Pettus* v. *Hendricks*, 113 Va. 326, 330, 74 S. E. 191. *Bryant* v. *Tunstall*, 177 Va. 1, 7, 12 S. E. 2d 784; *Meade* v. *Meade*, 111 Va. 451, 453, 69 S. E. 330; *Wahl* v. *Waters*, 11 Cal. 2d 81, 70 P. 2d 945, 77 P. 2d 1072; *Jersey City* v. *State Board of Tax Appeals*, 133 N. J. L. 202, 43 A. 2d 799; *City of Uvalde* v. *Burney*, 145 S. W. 311 (Tex. Civ. App. 1912); *State* v. *Industrial Commission*, 233 Wis. 461, 289 N. W. 769; 39 Words and Phrases, perm. ed., "Shall in Statutes as Permissive or Mandatory," p. 122, *et seq.*

The decision of *Owen* v. *Reynolds*, 172 Va. 304, 1 S. E. 2d 316, is

persuasive that the provision of § 22-60 relating to the time of appointment of the Electoral Board is merely directory.

There the validity of the election on December 2, 1937, of Dr. A. M. Owen to the County School Board by members of an Electoral Board who had held over after expiration of their original terms in 1930 was challenged. Owen had been elected by the holdover board for an unexpired term ending June 30, 1940, to fill a vacancy occasioned by the death of a former electee. On January 10, 1938, the circuit court appointed three new members to compose the Electoral Board to replace the holdover members "for the unexpired term ending August 1, 1938." This new Electoral Board elected Reynolds to fill the vacancy on the School Board that had been previously filled by the holdover board when it elected Owen, and his right to hold the office was challenged by Reynolds, the second electee.

In holding that Owen had been duly elected by the holdover board, the court said:

"The trustee electoral board and its members are not merely authorized to continue to discharge the duties of their office but by the very language of the statute which gives this board being continue to hold office until their successors have been appointed and qualified; moreover, section 33 of our Constitution declares that 'all officers, elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified.' Plainly under legislative mandate, the members remain in office, and under constitutional mandate, they are not merely empowered but are directed to discharge its duties after their terms of service have expired and until their successors have qualified." At page 308.

Here no public interest or welfare is dependent upon strict and prompt compliance with the time provision of the statute. The holdover clause of § 33[1] of the State Constitution furnishes ample protection to the public. We find nothing in the object or the context of the statute indicative of an intent that the provision relating to the time of appointment of the board be deemed imperative, nor does the public weal require that we hold it to be mandatory.

The purpose of the provision is to prompt a regular and periodic consideration and review by the appointing power of the personnel

---

[1] "* * * All officers, elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified."

of the electoral board. It is not intended to fix a time limitation upon the power of the court or judge in vacation to make an appointment after the expiration of the thirty days mentioned or to invalidate a tardy appointment.

The decree appealed from will be reversed, the Board composed of Huffman, Hoak and Warren, who were appointed by the orders of March 7 and 10, 1955, will be adjudged and decreed to be the lawful School Trustee Electoral Board of Page county, and Oscar T. Warren will be restored to his incumbency as a member of said Board, and it will be adjudged and decreed that M. E. McAleer was legally elected on May 14, 1955, by the School Trustee Electoral Board as a member of the School Board of Page county to fill the vacancy caused by the expiration of G. Jennings Kite's term of office, and the said McAleer will be restored to his incumbency of that office.

*Reversed and final decree.*